UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DEBORAH MORRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:14-cv-01008-SGC |
| ) | |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, Commissioner, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**[1]

The plaintiff, Deborah Morris, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Morris timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C. § 405(g). For the reasons discussed below, the Commissioner's decision is due to be affirmed.

**I. Procedural History**

Morris has at least a high school education and has previously worked as a bus driver and a bookkeeper. (Tr. at 40, 45, 132, 138). In her application for DIB, she claimed that she became disabled on May 28, 2011, due to degenerative disk disease, back pain, neck pain, joint pain, and sleep apnea. (*Id.* at 53, 107, 127, 131). After her claims were denied, Morris requested a hearing before an administrative law judge

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 12).

1

("ALJ"). (*Id.* at 52-58). Following a hearing, the ALJ denied Morris's claims. (*Id.* at 9-22). Morris was 47 years old when the ALJ issued his decision. (*Id.* at 30). After the Appeals Council declined to review the ALJ's decision (*id.* at 1-4), that decision became the final decision of the Commissioner, *see Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Morris initiated this action. (Doc. 1).

## II. Statutory and Regulatory Framework

To establish her eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). Furthermore, a claimant must show that she was disabled between her alleged initial onset date and her date last insured. *Mason v. Comm'r of Soc. Sec.*, 430 Fed. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)). The Social Security Administration employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* at § 404.1520(a)(4)(i). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 Fed. App'x 862, 863 (11th Cir.

2012).  If the claimant is engaged in substantial gainful activity, the Commissioner will determine the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i) and (b).  At the first step, the ALJ determined Morris met the Social Security Administration's insured status requirements through December 31, 2015, and had not engaged in substantial gainful activity since her alleged onset date of May 28, 2011.  (Tr. at 14-15).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months.  20 C.F.R. § 404.1520(a)(4)(ii).  An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at § 404.1508.  Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms."  *Id.*; *see also* 42 U.S.C. § 423(d)(3).  An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ."  20 C.F.R. § 404.1520(c).[2]  "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the

---

[2] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1521(a). A claimant may be found disabled based on a combination of impairments, even though none of her individual impairments alone is disabling. 20 C.F.R. § 404.1523. The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity. *Id.* at § 404.1512(a) and (c). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will determine the claimant is not disabled. *Id.* at § 404.1520(a)(4)(ii) and (c).

At the second step, the ALJ determined Morris had the following severe impairments: degenerative disc disease in the lumbar and cervical spine, pain disorder associated with psychological features and a general medical condition, anxiety disorder, obesity, and obstructive sleep apnea. (Tr. at 14).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii); *see also id.* at § 404.1525-26. The claimant bears the burden of proving that her impairment meets or equals one of the Listings. *Reynolds-Buckley*, 457 Fed. App'x at 863. If the claimant's impairment meets or equals one of the Listings, the Commissioner will determine the claimant is disabled. 20 C.F.R § 404.1520(a)(4)(iii) and (d). At the third step, the ALJ determined Morris did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the Listings. (Tr. at 15-16).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 404.1520(e); *see also id.* at § 404.1545. A claimant's RFC is the most he can do despite his impairment. *See id.* at § 404.1545(a)(1). At the fourth step, the Commissioner will compare her assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 404.1520(a)(4)(iv) and (e), 404.1560(b). "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1). The claimant bears the burden of proving that her impairment prevents her from performing her past relevant work. *Reynolds-Buckley*, 457 Fed. App'x at 863. If the claimant is capable of performing her past relevant work, the Commissioner will determine the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b)(3).

Before proceeding to the fourth step, the ALJ determined that Morris had the RFC to perform less than the full range of sedentary work as defined in 20 C.F.R. § 1567(a). Specifically, the ALJ found that Morris should be able to alternate between sitting and standing every 30 minutes throughout the work day; cannot climb ladders, ropes, scaffolds, ramps, or stairs; can occasionally balance, stoop, kneel, crouch, and crawl; can occasionally rotate, flex, and extend her neck; can frequently handle and finger objects with both hands; should avoid concentrated exposure to extreme temperatures, vibration,

and pulmonary irritants such as fumes, odors, dust, gases, and poorly ventilated areas; should avoid all exposure to hazardous machinery and unprotected heights; and is limited to performing simple, routine, repetitive, one-to-three step tasks in a low stress job, which is defined as requiring only occasional decision making, involving only occasional changes in the work setting, and requiring only occasional interaction with the public and co-workers. (Tr. at 16-20). At the fourth step, the ALJ determined Morris was not capable of performing any of her past relevant work. (*Id.* at 20).

If the claimant is unable to perform her past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 404.1560(c)(1). If the claimant is capable of performing other work, the Commissioner will determine the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will determine the claimant is disabled. *Id.*

At the fifth step, considering Morris's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Morris can perform, such as those of addressing clerk, charge account clerk, and weight tester. (Tr. at 20-21). Therefore, the ALJ concluded Morris was not disabled. (*Id.* at 21).

## III. Standard of Review

Review of the Commissioner's decision is limited to a determination whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine whether the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

7

**IV. Discussion**

On appeal, Morris argues that the ALJ failed to (1) properly evaluate the credibility of Morris's testimony regarding the intensity, persistence, and limiting effects of her symptoms and (2) articulate good cause for discounting certain opinions of her treating physician, Mohammad Ismail, M.D.  (Doc. 9).

**A. Credibility**

When a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms, the pain standard articulated by the Eleventh Circuit in *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991), applies.  *See also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

> The pain standard requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Dyer*, 395 F.3d at 1210 (quoting *Holt*, 921 F.2d at 1223).  Provided the *Holt* pain standard is met, an ALJ considers a claimant's testimony of pain or other subjective symptoms.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

An ALJ is permitted to discredit a claimant's subjective testimony of pain or other symptoms if she "clearly 'articulate[s] explicit and adequate reasons'" for doing so. *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1561-62).  "A clearly articulated credibility finding with substantial supporting evidence will not be disturbed by a reviewing court."  *Foote*, 67 F.3d at 1562.  In determining credibility an ALJ may

8

consider objective medical evidence, medical opinions, and a claimant's reported daily activities, amongst other things.  20 C.F.R. § 404.1529(c).

Morris testified that because of her pain she can only stand for 15 minutes and walk for less than one block; cannot sit for a long period of time (i.e., more than 15 minutes); cannot not lift a gallon of milk; and must lie down several hours each day.  (Tr. at 33-34).  The ALJ found that Morris's testimony regarding the intensity, persistence, and limiting effects of her pain was of limited credibility because it was not supported fully by the objective medical evidence or Morris's reported activities.  (*Id.* at 17-20).

First, the ALJ considered MRIs of Morris's lumbar and cervical spine.  (*Id.* at 17-18).  An MRI of Morris's lumbar spine performed in April of 2010 showed degenerative disc disease at L3-4 and L4-5, resulting in moderate relative stenosis; a very mild annular bulge at L5-S1 with mild facet degenerative change and no significant stenosis; and a mild encroachment of the neural foramen at L3-4 through L5-S1.  (*Id.* at 179).  These findings were similar to findings of an MRI of Morris's lumbar spine performed in September of 2008.  (*Id.* at 179).  The ALJ found this similarity to be significant because Morris continued to work for nearly three years after the 2008 MRI and for nearly one year more after the 2010 MRI.  (*Id.* at 17).  Contrary to Morris's assertion (Doc. 9 at 8), the ALJ did not incorrectly infer that Morris's condition remained static between the 2008 and 2010 MRIs.  This is exactly the inference a comparison of the MRIs supports.

An MRI of Morris's cervical spine performed in April of 2010 showed the vertebral body heights and disc space heights to be well maintained; mild central stenosis secondary to right paracentral disc protrusion at C5-6; a moderate encroachment of the

9

neural foramen bilaterally at C5-6; and very minimal central disc protrusion at C6-7 and T1-2 without significant stenosis. (*Id.* at 180).

The ALJ also considered the following objective medical evidence in assessing Morris's credibility: Morton Rickless, M.D. performed a consultative examination of Morris in August of 2011. (*Id.* at 432-35). Dr. Rickless noted that Morris had pain in her lower back but no limited range of motion in her neck or spasms in her neck or back. (*Id.* at 433-34). He also noted that Morris had normal fine and gross motor skills, which the ALJ found to suggest that Morris's cervical impairment was not causing any radiating neurological problems. (*Id.* at 18, 434). Finally, Dr. Rickless noted that while Morris had difficulty getting on and off the exam table and from the supine to sitting position, she appeared to walk somewhat better outside his office than inside. (*Id.* at 433). The ALJ found that Dr. Rickless's observation regarding the change in Morris's gait suggested that Morris intended to make Dr. Rickless believe her symptoms were worse than was true. (*Id.* at 17, 20). The ALJ further found that this undermined Morris's credibility. (*Id.*). Morris argues that the ALJ's reliance on Dr. Rickless's observation is irrational because that observation was based on pure speculation. (Doc. 9 at 11). However, Dr. Rickless's observation was not speculative. Rather, it was based on what Dr. Rickless actually saw. Furthermore, the ALJ's consideration of this observation was appropriate. *See* 20 C.F.R. § 404.1529(c).

In June of 2010, Dr. Ismail, one of Morris's treating physicians, noted tenderness in Morris's lower back and neck; that when bending, her range of motion was within normal limits, although she was slow coming up; and that her gait was normal. (*Id.* at

184).  In July of 2011, Dr. Ismail noted only mild pain on palpation of Morris's tender points and that Morris's gait was normal.  (*Id.* at 190-91).  Dr. Ismail made the same observations regarding Morris's pain and gait in August of 2011.  (*Id.* at 485-86).  In January of 2012, Dr. Ismail noted that Morris described moderate radiating back pain. (*Id.* at 488).  He found tenderness in her lower lumbar region and a decreased range of motion in her neck due to pain.  (*Id.* at 490).  He concluded that she needed rest for three months, referred her to aqua therapy, and instructed her to return in three months.  (*Id.*). However, the record of Morris's follow-up visit in April of 2012 makes no mention of back or neck pain.  (*Id.* at 491-93).

In September of 2011, Robert Summerlin, Ph.D., a consultative psychologist, diagnosed Morris with a pain disorder associated with both psychological factors and a general medical condition.  (*Id.* at 438).  The ALJ found that this diagnosis suggests Morris dwells on her pain, which may not be as severe as she believes.  (*Id.* at 18).

Second, the ALJ considered Morris's daily activities and found that they showed she was more capable than she alleged, thereby undermining her credibility.  (*Id.* at 20). Specifically, the ALJ noted that Morris cares for her family and various animals, performs light chores, regularly shops and drives, attends church two times per week, and regularly scrapbooks with others.  (*Id.* at 19, 20).  Morris argues that her participation in these activities is more limited than insinuated by the ALJ.  (Doc. 9 at 9).  However, substantial evidence supports the ALJ's findings of fact.  Morris completed a function report indicating that she performs light chores and cares for her family and animals with help, drives, and shops once per week.  (Tr. at 146-53).  Furthermore, Morris testified

11

that she scrapbooks on her own and with friends and attends church twice each week. (*Id.* at 38). Morris also argues that her participation in these activities does not disqualify her from disability. (Doc. 9 at 10). Even so, the ALJ was allowed to consider the same in assessing Morris's credibility. *See* 20 C.F.R. § 404.1529(c); *Connor v. Astrue*, 415 Fed. App'x 992, 995 (11th Cir. 2011). The ALJ also noted that approximately six months before the hearing, Morris assisted her husband in ripping up carpet. (Id. at 44-45, 491). Morris argues that the ALJ misconstrued her participation in this activity because she testified that she merely held the corner of some carpet so her husband could pull out a staple. (Doc. 9 at 10). It is not clear that the ALJ characterized Morris's participation in this activity in the way Morris claims. The ALJ merely noted that Morris "help[ed] her husband pull up carpet" and "help[ed] rip up carpet." (Tr. at 19-20). In any event, a record of Morris's visit to Dr. Ismail shortly after the incident in questions states that Morris, herself, reported "she was pulling up carpet" and injured her elbow. (*Id.* at 491).

In sum, the ALJ sufficiently articulated his reasons for discrediting Morris's testimony as to her pain and its limiting effects, and that credibility determination is supported by substantial evidence.

### B. Treating Physician's Opinions

In a letter dated June 19, 2012, and addressed to "whom it may concern," Dr. Ismail opined as follows:

> Ms. Morris is not able to sit, stand, stoop, or bend for any given (sic) of time due to her chronic neck pain and severe back pain. Ms. Morris is not able to drive for a long period of time due to her chronic back pain and severe neck pain. Ms. Morris is permanently disabled due to her decline in her medical conditions. Ms. Morris is not able to sit for more than 30

>   minutes at any given (sic) of time, she is not able to stand more than 30 minutes at any given time, she is not able to bend for more than 10 minutes at any given (sic) of time due to her chronic neck pain and chronic back pain.

(Tr. at 515). The ALJ gave partial weight to Dr. Ismail's opinion as to Morris' functional capacity and no weight to Dr. Ismail's opinion that Morris is disabled. (*Id.* at 19). Morris argues that the opinions Dr. Ismail expressed in his June 19th letter were entitled to substantial or considerable weight absent good cause to discredit them. (Doc. 9 at 4-7).

Morris is correct that "[a]bsent 'good cause,' an AJL is to give the medical opinions of treating physicians 'substantial or considerable weight.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (citing 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2)). However, Dr. Ismail's opinions as to Morris's functional capacity and disability are not medical opinions, but rather opinions on issues reserved to the Commissioner. " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment, including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment, and [the claimant's] physical or mental restrictions.'" *See Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). An opinion as to a claimant's functional capacity or whether a claimant is able to work is not a medical opinion, even if offered by a treating source, but rather a dispositive finding for the Commissioner to make. 20 C.F.R. §

13

404.1527(e)(1) & (2); SSR 96-5p; *Kelly v. Comm'r of Soc. Sec.*, 401 Fed. App'x 403, 407 (11th Cir. 2010). Because Dr. Ismail's opinions as to Morris's functional capacity and disability are opinions on issues reserved to the Commissioner, not medical opinions, they are entitled to no special significance. *See* 20 C.F.R. § 404.1527(e)(3); SSR 96-5p; *Kelly*, 401 Fed. App'x at 407.

Even so, the ALJ considered these opinions as instructed by the social security regulations. *See Lawton v. Comm'r of Soc. Sec.*, 431 Fed. App'x 830, 834 (11th Cir. 2011) (ALJ should still consider doctor's opinion on issues reserved to Commissioner) (citing 20 C.F.R. § 404.1527(e)); SSR 96-5p. In assigning weight to medical opinions, an ALJ may consider many factors, including whether a medical opinion is well-supported and consistent with a claimant's records. 20 C.F.R. § 404.1527(d); *Wilcox v. Comm'r, Soc. Sec. Admin.*, 442 Fed. App'x 438, 439 (11th Cir. 2011). Here, the ALJ justified the assignation of partial weight to Dr. Ismail's opinions as to Morris's functional capacity and no weight to Dr. Ismail's opinion that Morris is disabled on several grounds.

First, the ALJ noted that Dr. Ismail's opinions seemed premised on Morris's subjective statements of her pain, while objective evidence demonstrated Morris's allegations regarding the severity of her pain were not credible. (Tr. at 19). As discussed above, the ALJ sufficiently articulated his reasons for discrediting Morris's testimony of her pain and its limiting effect, and that credibility determination is supported by substantial evidence.

Second, the ALJ noted that Dr. Ismail's opinions seemed inconsistent with Morris's testimony that she helped her husband pull up carpet approximately six months

before the hearing.  (*Id.* at 19).  Third, the ALJ noted that Morris testified that she was the primary caretaker for her 11-year-old son and a 20-acre home site because her husband was a truck driver and consistently on the road during the week.  (*Id.* at 19).  Finally, the ALJ noted that Morris's daily activities demonstrate that she has more functional capacity than Dr. Ismail opined.  (*Id.*).  In other words, the same evidence that undermined Morris's testimony as to her physical capabilities also undermines Dr. Ismail's opinions as to Morris's physical capabilities.  The ALJ properly weighed Dr. Ismail's opinions based on the factors enumerated in 20 C.F.R. § 404.1527(d), and his finding that those opinions were entitled to partial and no weight, respectively, is supported by substantial evidence.

## V.     Conclusion

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is supported by substantial evidence and in accordance with applicable law.  Therefore, that decision is due to be **AFFIRMED**.  A separate order will be entered.

DONE this 4th day of September, 2015.

_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE